# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

---------------------------------------------------------

SHIVA STEIN,
BROOKLYN, NEW YORK 11231,

            Plaintiff,

v.

LEGG MASON, INC.,
100 International Drive
Baltimore, Maryland 21202

ROBERT E. ANGELICA,
100 International Drive
Baltimore, Maryland 21202

CAROL ANTHONY "JOHN" DAVIDSON,
100 International Drive
Baltimore, Maryland 21202

EDWARD P. GARDEN,
100 International Drive
Baltimore, Maryland 21202

MICHELLE J. GOLDBERG,
100 International Drive
Baltimore, Maryland 21202

STEPHEN C. HOOLEY,
100 International Drive
Baltimore, Maryland 21202

JOHN V. MURPHY,
100 International Drive
Baltimore, Maryland 21202

DAVID L. LINGERFELT,
100 International Drive
Baltimore, Maryland 21202

NELSON PELTZ,
100 International Drive
Baltimore, Maryland 21202

Civil Action No. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

ALISON A. QUIRK,                              :
100 International Drive                        :
Baltimore, Maryland 21202                      :
                                               :
-AND-                                          :
                                               :
JOSEPH A. SULLIVAN,                            :
100 International Drive                        :
Baltimore, Maryland 21202                      :
                                               :
           Defendants.                              :
-------------------------------------------------------   :
                                               :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

1.      This is an action brought by Plaintiff against Legg Mason, Inc. ("Legg Mason or

the "Company"), and the members of Legg Mason's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their

violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between Legg Mason and Franklin Resources,

Inc. ("Franklin Resources").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy

Statement") to be filed on March 27, 2020 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement

recommends that Company stockholders vote in favor of a proposed transaction whereby Alpha

Sub, Inc., a Maryland corporation and wholly-owned subsidiary of Franklin Resources ("Merger

Sub") will merge with and into Legg Mason, with Legg Mason surviving the merger as a wholly-owned subsidiary of Franklin Resources (the "Proposed Transaction"). Pursuant to the terms of the Agreement and Plan of Merger the companies entered into (the "Merger Agreement"), each outstanding Legg Mason common share of beneficial interest will be converted into the right to receive $50.00 in cash per share (the "Merger Consideration").

3.      As discussed below, Defendants have asked Legg Mason's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.  The financial projections were also utilized by the financial advisors of the Company, PJT Partners LP ("PJT") and J.P. Morgan Securities LLC ("J.P. Morgan") in conducting the valuation analyses in support of their fairness opinions. The Proxy Statement also omits or misrepresents information regarding the financial analyses conducted by Goldman Sachs and Citi.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Legg Mason's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'
violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange
Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges
violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant
Legg Mason is incorporated in Maryland, or is an individual who is either present in this District
for jurisdictional purposes or has sufficient minimum contacts with this District as to render the
exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair
play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.
§ 78aa, as well as under 28 U.S.C. § 1391, because Legg Mason in incorporated and
headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Legg Mason common
stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Robert E. Angelica has served as a member of the Board
since February 2007.

11.     Individual Defendant Carol Anthony "John" Davidson has served as a member of
the Board since May 2014.

12.     Individual Defendant Edward P. Garden has served as a member of the Board
since May 2019.

13.     Individual Defendant Michelle J. Goldberg has served as a member of the Board since November 2017.

14.     Individual Defendant Stephen C. Hooley has served as a member of the Board since 2019.

15.     Individual Defendant John V. Murphy has served as a member of the Board since June 2013 and Lead Independent Director since October 2014.

16.     Individual Defendant Nelson Peltz has served as a member of the Board since May 2019.

17.     Individual Defendant Alison A. Quirk has served as a member of the Board since November 2017.

18.     Individual Defendant Joseph A. Sullivan has served as a member of the Board since February 2013 and Chairman of the Board since October 2014, as well as President and Chief Executive Officer since 2013.

19.     Defendant Legg Mason is incorporated in Maryland and maintains its principal offices at 100 International Drive Baltimore, MD 21202-1099.  The Company's common stock trades on the New York Stock Exchange under the symbol "LM."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

22.     Legg Mason nd its subsidiaries are principally engaged in providing asset management and related financial services to individuals, institutions, corporations and

municipalities. The Company operates through Global Asset Management segment. Global Asset Management provides investment advisory services to institutional and individual clients and to the Company-sponsored investment funds. The Company, through its subsidiaries, provides investment management and related services to institutional and individual clients, Company-sponsored investment funds and retail separately managed account programs. It offers its products and services directly and through various financial intermediaries. It has operations principally in the United States and the United Kingdom and also has offices in Australia, Bahamas, Brazil, Canada, Chile, China, Dubai, France, Germany, Italy, Japan, Luxembourg, Poland, Singapore, Spain, Switzerland and Taiwan.

23.     On February 18, 2020, Franklin Resources announced the Proposed Transaction:

San Mateo, CA, February 18, 2020 – Franklin Resources, Inc. (the "Company") [NYSE:BEN], a global investment management organization operating as Franklin Templeton, today announced that it has entered into a definitive agreement to acquire Legg Mason, Inc. [NYSE:LM] for $50.00 per share of common stock in an all-cash transaction. The Company will also assume approximately $2 billion of Legg Mason's outstanding debt. The acquisition of Legg Mason and its multiple investment affiliates, which collectively manage over $806 billion in assets as of January 31, 2020, will establish Franklin Templeton as one of the world's largest independent, specialized global investment managers with a combined $1.5 trillion in assets under management (AUM) across one of the broadest ranges of high-quality investment teams in the industry. The combined footprint of the organization will significantly deepen Franklin Templeton's presence in key geographies and create an expansive investment platform that is well balanced between institutional and retail client AUM. In addition, the combined platform creates a strong separately managed account business.

"This is a landmark acquisition for our organization that unlocks substantial value and growth opportunities driven by greater scale, diversity and balance across investment strategies, distribution channels and geographies," said Greg Johnson, executive chairman of the Board of Franklin Resources, Inc. "Our complementary strengths will enhance our strategic positioning and long-term

growth potential, while also delivering on our goal of creating a more balanced and diversified organization that is competitively positioned to serve more clients in more places."

Jenny Johnson, president and CEO of Franklin Templeton, said, "This acquisition will add differentiated capabilities to our existing investment strategies with modest overlap across multiple world-class affiliates, investment teams and distribution channels, bringing notable added leadership and strength in core fixed income, active equities and alternatives. We will also expand our multi-asset solutions, a key growth area for the firm amid increasing client demand for comprehensive, outcome-oriented investment solutions."

Joseph A. Sullivan, chairman and CEO of Legg Mason, said, "The incredibly strong fit between our two organizations gives me the utmost confidence that this transaction will create meaningful long-term benefits for our clients and provide our shareholders with a compelling valuation for their investment. By preserving the autonomy of each investment organization, the combination of Legg Mason and Franklin Templeton will quickly leverage our collective strengths, while minimizing the risk of disruption. Our clients will benefit from a shared vision, strong client-focused cultures, distinct investment capabilities and a broad distribution footprint in this powerful combination."

Carol Anthony "John" Davidson, lead independent director of Legg Mason, said, "Today's announcement marks the beginning of an exciting next chapter for Legg Mason, our investment affiliates and valued clients, who will benefit from a leading global asset manager with the scale to compete and win in today's markets. I am honored to have had the opportunity to serve as the lead independent director of this dynamic board, and I am truly appreciative of the hard work and dedication of the entire Legg Mason team."

Nelson Peltz, CEO and Founding Partner of Trian Fund Management, L.P. and a Legg Mason director said, "Given the dynamics of today's rapidly evolving and increasingly competitive asset management sector, I believe this transaction is compelling. In our view, it offers an attractive valuation for Legg Mason's shareholders. I believe it will also enable Legg Mason's investment affiliates to remain at the forefront of an industry where scale is increasingly vital to success and to join Franklin Templeton, an organization that I have deep respect for and confidence in."

Trian Fund Management, L.P. and funds managed by it, which collectively own approximately 4 million shares or 4.5% of the outstanding stock of Legg Mason, have entered into a voting agreement in support of the transaction.

Jenny Johnson added, "This transaction gives us significant scale, addresses strategic gaps and brings greater balance to our business, while positioning us for accelerated growth in the future. We have incredible respect and admiration for the success Legg Mason and its investment affiliates have achieved and we have structured the transaction to ensure that its affiliates have the right mix of independence and support to continue building on their strong track records. Legg Mason's investment affiliates will be able to leverage Franklin Templeton's global infrastructure and ongoing investment in technology and innovation, while clients can take comfort in the combined firm's financial strength and aligned interests."

Continued Autonomy for Investment Affiliates Franklin Templeton has spent significant time with the affiliates and there is strong alignment among all parties in this transaction and shared excitement about the future of the company. James W. Hirschmann, CEO of Western Asset, a Legg Mason affiliate, said, "Western Asset is excited to be joining the Franklin Templeton family, a firm with a long and storied history of proven financial performance and a leadership team and board with decades of asset management experience who value our investment independence and organizational autonomy. Like us, Franklin Templeton understands the importance of culture, teams and core values to achieving outstanding investment results for clients."

Terrence J. Murphy, CEO of ClearBridge Investments, a Legg Mason affiliate, said, "As part of Franklin Templeton, we are confident that we will retain the strong culture that has defined our success as a recognized market leader in active equities. Their commitment to investment autonomy, augmented by the scale and reach that the combined organization will provide, will allow us to deliver for our existing clients and expand our ability to deliver our investment capabilities in new channels and regions. We are very pleased to join the team at Franklin Templeton and excited about what we can do together."

**Organizational Structure and Parent Company Integration**

With this acquisition, Franklin Templeton will preserve the autonomy of Legg Mason's affiliates, ensuring that their

investment philosophies, processes and brands remain unchanged. As with any acquisition, the pending integration of Legg Mason's parent company into Franklin Templeton's, including the global distribution operations at the parent company level, will take time and only commence after careful and deliberate consideration.

Following the closing of the transaction, Jenny Johnson will continue to serve as president and CEO, and Greg Johnson will continue to serve as executive chairman of the Board of Franklin Resources, Inc. There will be no changes to the senior management teams of Legg Mason's investment affiliates. Global headquarters will remain in San Mateo, CA and the combined firm will operate as Franklin Templeton.

After careful consideration, EnTrust Global, a Legg Mason affiliate that provides alternative investment solutions, and Franklin Templeton, jointly agreed that it was in their best interest that EnTrust repurchase its business, which will be acquired by its management at closing. EnTrust will maintain an ongoing relationship with Franklin Templeton. Jenny Johnson added, "EnTrust is an excellent business and we recognize and appreciate their desire to once again become a private company. We have appreciated their collaboration in our discussions and look forward to our ongoing relationship."

**Transaction Details**

The all-cash consideration of $4.5 billion will be funded from the Company's existing balance sheet cash. Franklin Templeton will also assume approximately $2 billion in Legg Mason's outstanding debt. Upon closing of the transaction, Franklin Templeton expects to maintain a robust balance sheet and considerable financial flexibility with pro forma gross debt of approximately $2.7 billion with remaining cash and investments of approximately $5.3 billion. This transaction is designed to preserve the Company's financial strength and stability with modest leverage, significant liquidity and strong cash flow to provide ongoing flexibility to invest in further growth and innovation.

This transaction is expected to generate upper twenties percentage GAAP EPS accretion in Fiscal 2021 (based on street consensus earnings estimates for each company), excluding one-time charges, non-recurring and acquisition related expenses.

While cost synergies have not been a strategic driver of the transaction, there are opportunities to realize efficiencies through

parent company rationalization and global distribution optimization. These are expected to result in approximately $200 million in annual cost savings, net of significant growth investments Franklin Templeton expects to make in the combined business and in addition to Legg Mason's previously announced cost savings. The majority of these savings are expected to be realized within a year, following the close of the transaction, with the remaining synergies being realized over the next one to two years.

The transaction has been unanimously approved by the boards of Franklin Resources, Inc. and Legg Mason, Inc. This transaction is subject to customary closing conditions, including receipt of applicable regulatory approvals and approval by Legg Mason's shareholders, and is expected to close no later than the third calendar quarter of 2020.

Broadhaven Capital Partners, LLC and Morgan Stanley & Co LLC served as financial advisors to Franklin Resources, Inc. Ardea Partners LP also provided advice. Willkie Farr & Gallagher LLP acted as external legal counsel. PJT Partners served as the lead financial advisor to Legg Mason. J.P. Morgan Securities LLC also served as financial advisor to Legg Mason. Weil, Gotshal & Manges LLP served as lead counsel to Legg Mason and Skadden, Arps, Slate, Meagher & Flom LLP served as special counsel to Legg Mason. Dechert LLP served as legal counsel to EnTrust Global.

\* \* \*

24.     The Board has unanimously agreed to Proposed Transaction.  It is therefore imperative that Legg Mason's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

25.     On March 27, 2020, Legg Mason filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement

before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26.     With respect to the financial projections disclosed in the Proxy Statement, the Proxy Statement fails to provide material information.

27.     For the Legg Mason projections provided by Company management, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA (Post-SBC) and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 50.

28.     With respect to PJT's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the ratios and multiples and financial metrics for the transactions observed by PJT in its analysis.

29.     With respect to PJT's *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the ratios and multiples and financial metrics for the companies observed by PJT in its analysis.

30.     With respect to PJT's *Discounted Cash Value Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values; (ii) the basis for applying a exit multiple range of 6.5x to 8.5x to the Company's estimated 2024E EBITDA; (iii) the basis for applying a perpetuity growth rate range of 0.2% to 0.8% to the Company's 2024E unlevered free cash flow; (iv) the

basis for selecting the discount rate range from 9.0% to 11.0%; (v) the Company's cash as of December 31, 2019; (vi) the Company's net debt as of December 31, 2019; (vii) the Company's value of equity investments as of December 31, 2019; and (viii) the number of fully diluted outstanding shares of Legg Mason as of December 31, 2019.

31.     With respect J.P. Morgan's *Public Trading Multiples* Analysis, the Proxy Statement omits the financial metrics for each of the selected companies, or even summary statistics as to those same financial metrics. Instead, the Proxy Statement discloses only the reference ranges selected by J.P. Morgan, without reference to any of the actual multiples found in its analysis.

32.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples for each of the selected transactions analyzed by J.P. Morgan, as well as any benchmarking analyses J.P. Morgan performed for Legg Mason relation to the target companies.

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying a exit multiple range of 6.5x to 8.5x to the Company's estimated 2024E EBITDA; (ii) the basis for applying a perpetuity growth rate range of 0.5% to 1.0% to the Company's unlevered free cash flow during the Company's terminal year; (iii) the basis for selecting the discount rate range from 9.0% to 11.0%; (iv) the Company's present value of tax benefits from the Company's estimated net operating loss carry-forwards and other tax benefits as provided by Company's management.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants

were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Legg Mason within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Legg Mason, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Legg Mason, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Legg Mason, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that

the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 30, 2020

**GOLDMAN & MINTON, P.C.**

By:  _/s/ Thomas J. Minton_

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Thomas J. Minton (Bar No. 03370)
3600 Clipper Mill Road, Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Email: tminton@charmcitylegal.com

_Attorneys for Plaintiff_